**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

KRISTEN CARLSON,

      Plaintiff,

      v.                                          Civ. No. 10-1195- JCH/RHS

BOARD OF EDUCATION OF THE
ALBUQUERQUE PUBLIC SCHOOLS,

      Defendant.

**MEMORANDUM OPINION AND ORDER**

This matter comes before the Court on several pretrial motions, including four motions in limine and one motion to strike an exhibit to a supporting brief: (1) *Plaintiff's Motion in Limine and Memorandum in Support* (Doc. 54); (2) *Albuquerque Public Schools' Motion to Strike Exhibit 1 to Plaintiff's Reply in Support of Plaintiff's Motion in Limine* (Doc. 65); (3) *APS' Motion in Limine Regarding Lost Wage Damages* (Doc. 55); (4) *Albuquerque Public Schools' Motion in Limine to Exclude Evidence, Testimony, and References Related to the Veracity and Merits of Plaintiff's Expressed Concerns, and Tangential, Inflammatory Issues* (Doc. 56); and (5) *Albuquerque Public Schools' Motion in Limine to Exclude Irrelevant, Late Disclosed Witnesses and Exhibits From Trial* (Doc. 66).  Having considered the motions, briefs, and exhibits, and being otherwise fully informed, the Court makes the findings set forth below.

## I.    Plaintiff's Motion in Limine

Plaintiff's first motion seeks to preclude Defendant from introducing two categories of evidence at trial: (1) personnel records relating to Plaintiff maintained by her former employer,

1

the Moriarty-Edgewood School District,[1] and (2) the testimony of Plaintiff's former husband,

Alan Carlson, whom she divorced in 2005.

With respect to the personnel records, Plaintiff contends that her work history with a

previous employer is irrelevant character evidence offered for the impermissible purpose of

showing her alleged propensity to create discord in the workplace.  Defendant responds that it

seeks to introduce the records "to demonstrate Plaintiff's knowledge that her manner of

communicating with her co-workers was problematic, not to show that Plaintiff acted in

conformity with prior conduct."  (Doc. 57 at 1).  Defendant cites an inapposite, non-retaliation

case, *Kleinberg v. Albuquerque Public Schools*, 107 N.M 38, 46 (Ct. App. 1988), in which the

New Mexico Court of Appeals held that evidence of a school employee's prior "bad acts" was

admissible in an action challenging her discharge to show that she had notice that her conduct

violated the established school policies and procedures for which she was terminated.

The Court finds the personnel records to be irrelevant to the sole issue in this case –

whether Defendant failed to renew Plaintiff's contract in retaliation for her activism on behalf of

disabled students at APS.  Because Plaintiff's subjective awareness of how her demeanor in the

workplace had been perceived by past colleagues had no role in APS' decision not to re-hire her,

the Court finds that these documents constitute prohibited character evidence that is irrelevant to

determining the outcome of this action.  *See Neuren v. Adduci*, 43 F.3d 1507, 1510 (D.C. Cir.

1995) (district court abused its discretion in Title VII discrimination case in admitting evidence

that ex-law firm employee, who was purportedly terminated over her difficulty in getting along

---

[1]Plaintiff also seeks a ruling barring the testimony of various Moriarty-Edgewood School District employees/former co-workers of Plaintiff previously identified by Defendant. Defendant confirms in its response brief that it "has specifically withdrawn all witnesses from the Moriarty-Edgewood School District except for Cindy Sims, who would be called for authentication purposes only." (Doc. 57 at 4).

with other employees, experienced similar difficulties at former firm).

With respect to the testimony of Alan Carlson, Plaintiff notes that she was divorced from Mr. Carlson for more than four years prior to beginning her employment with APS, and that he has no firsthand knowledge of any issues in this case.  Plaintiff further allows that she is willing to stipulate that she will not testify as to her general reputation for truthfulness, which she argues would obviate any possible need for her former husband's testimony.  Defendant responds that it may seek to call Mr. Carlson to rebut Plaintiff's portrayal of herself "as the white knight who advocates for children."  (Doc. 54 Ex.1).

The Court generally agrees with Plaintiff that it is difficult to imagine a scenario in which Mr. Carlson's testimony would be relevant to the instant action.  However, because it appears that neither Plaintiff nor Mr. Carlson have been deposed by the opposing party, the Court will refrain from ruling on this portion of Plaintiff's motion until trial.  Defendant must alert the Court prior to calling Mr. Carlson to testify.  Further, the parties are instructed not to mention any testimonial evidence he may provide during voir dire or opening statements.

**II.      Defendant's Motion to Strike Exhibit Involving Plaintiff's Divorce Date**

Defendant further moves to strike Exhibit 1 to Plaintiff's reply brief  – Plaintiff's interrogatory response stating that she and Alan Carlson were divorced in 2005.  Defendant argues that, by setting forth the date of her divorce in her reply brief, Plaintiff has raised new issues about the possible relevancy of her ex-husband's testimony to which Defendant is unable to respond (though Defendant's motion to strike proceeds to address those very issues).  Defendant's motion to strike will be denied.

**III.     Defendant's Motion Regarding Lost Wage Damages**

Defendant's first motion in limine asks the Court for a ruling (1) barring Plaintiff from

claiming lost wages from January 2011 onward, and (2) establishing a quarterly periodic method

for calculating any lost damages she may be awarded for 2010 – whereby the Court would take

the amount the Plaintiff would have earned for each quarter and deduct the wages, if any,

Plaintiff earned from any other employment during that quarter.  Defendant seeks a jury

instruction on the quarterly method in lieu of the method provided for in the New Mexico

Uniform Jury Instruction on lost wages in wrongful discharge cases, which describe lost wages

as "the wages [plaintiff] would have earned during the period that she would have remained

employed by defendant had there been no wrongful discharge."  NMUJI 13-2311.

Plaintiff concedes that she obtained higher-paying employment in December 2010, so

that she has no lost wages from January 2011 onward.  Thus, all that remains for the Court to

decide is the lost wages calculation method to set forth in the jury instructions.  The Court will

review the parties' proposed jury instructions on damages and take Defendant's motion under

advisement.

**IV.  Defendant's Motion Related to the Merits of Plaintiff's Expressed Concerns**

Next, Defendant moves to preclude Plaintiff from offering into evidence any and all

evidence "related to the veracity and merits of the concerns Plaintiff expressed during the 2009-

2010 school year, and to tangential issues that Plaintiff ostensibly intends to interject for the sole

purpose of inflaming the passions of the jury and unfairly prejudicing APS."  (Doc. 56 at 1).

Defendant proffers a non-exhaustive list of examples of evidence it seeks to exclude as irrelevant

and prejudicial, including: the racial and socioeconomic composition of Atrisco Elementary

School; evidence of APS' failing to train its employees on the legal prohibition against

retaliation in the workplace; information related to previous lawsuits involving the delivery of

special education services at APS and Atrisco Elementary; and evidence going to the merits of

the complaints Plaintiff raised over the course of the school year, including but not limited to photographs of damage to and defects in APS buildings.  Plaintiff responds, *inter alia*, that evidence involving the content of her expressed concerns is relevant to the question of whether her activism constituted "protected activity" under the Rehabilitation Act and the NM Whistleblower Protection Act.  She further explains that she will offer evidence on APS' failure to train its employees about the prohibition against retaliation only if it is needed to rebut any evidence offered by Defendant that it took steps to prevent retaliatory acts; and that she will offer evidence of other lawsuits against APS only to rebut testimony that Defendant was not on notice about the kinds of concerns she raised during the course of her employment.

Without a full account of the evidence of her concerns that Plaintiff will attempt to introduce, the Court will refrain from ruling on Defendant's motion at this time. Thus, the parties must alert the Court prior to introducing any testimonial or extrinsic evidence at trial relating to the merits of the concerns and complaints voiced by Plaintiff during her employment at APS, at which time the Court will make a ruling depending on the evidence and the reason for which it is proffered.  Moreover, the parties are hereby instructed not to mention any such evidence during voir dire or opening statements.

**V.  Defendant's Motion to Exclude Irrelevant, Late-Disclosed Witnesses**

Finally, Defendant moves to preclude Plaintiff from offering the testimony of APS Educational Assistant Patricia Lanham-Nichols and APS Police Detective Carla Gandara. Plaintiff proposes to introduce evidence that, like her, Ms. Lanham-Nichols was the object of accusations made by APS employees – in Ms. Lanham-Nichols' case, that she touched two autistic children in an appropriate sexual manner while assisting them to change their clothing. Plaintiff claims that her proposed witnesses will testify that the allegations against Ms. Lanham-

Nichols were more thoroughly investigated than the allegations against Plaintiff, which led to

Ms. Lanham-Nichols being exonerated and permitted to remain at APS.  The Court finds that

Ms. Lanham-Nichols' case is too factually dissimilar to the situation involving Plaintiff's alleged

pinching of her student, J.M., to be relevant to the determination of whether Defendant's citing

the alleged pinch as a reason for failing to renew her contract is unworthy of belief.  There

appears to be no overlap between the accusers, investigators or decision-makers involved in the

two cases, and little similarity between the underlying factual allegations.  Accordingly,

Defendant's motion will be granted, and Plaintiff will be precluded from offering any

testimonial or extrinsic evidence related to Ms. Lanham-Nichols' case.


## CONCLUSION

**IT IS THEREFORE ORDERED THAT:**

(1)     *Plaintiff's Motion in Limine and Memorandum in Support* (Doc. 54) is **GRANTED** with respect to her personnel records from the Moriarty-Edgewood School District, and is otherwise taken under advisement;

(2)     *Albuquerque Public Schools' Motion to Strike Exhibit 1 to Plaintiff's Reply in Support of Plaintiff's Motion in Limine* (Doc. 65) is **DENIED;**

(3)     *APS' Motion in Limine Regarding Lost Wage Damages* (Doc. 55) is taken under advisement;

(4)     *Albuquerque Public Schools' Motion in Limine to Exclude Evidence, Testimony, and References Related to the Veracity and Merits of Plaintiff's Expressed Concerns, and Tangential, Inflammatory Issues* (Doc. 56) is taken under advisement; and

(5)     *Albuquerque Public Schools' Motion in Limine to Exclude Irrelevant, Late Disclosed Witnesses and Exhibits From Trial* (Doc. 66) is **GRANTED.**


_____
UNITED STATES DISTRICT JUDGE